# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN - SOUTHERN DIVISION

Katherine Payne, Maureen Baum, and
Jane K.R Doe,

        Plaintiffs,

Case No.:

Hon.

**V**

**MICHIGAN STATE UNIVERSITY;
THE BOARD OF TRUSTEES OF
MICHIGAN STATE UNIVERSITY;
LAWRENCE GERARD NASSAR
(individual and official capacity); USA
GYMNASTICS, INC.; TWISTARS USA,
INC. d/b/a GEDDERTS' TWISTARS
GYMNASTICS CLUB USA**

**Complaint and Jury Demand of
Plaintiff Katherine Payne, Maureen
Baum, and Jane K.R. Doe**

        **Defendants.**

_____

BRIAN J. McKEEN (P34123)
STEVEN C. HURBIS (P80993)
McKEEN & ASSOCIATES, P.C.
Attorneys for Plaintiff
645 Griswold St., Suite 4200
Detroit, MI 48226
(313) 961-4400 Phone
(313) 961-5985 Facsimile
bjmckeen@mckeenassociates.com
shurbis@mckeenassociates.com

---

## PLAINTIFF KATHERINE PAYNE, MAUREEN BAUM, AND JANE K.R. DOE'S COMPLAINT

    **NOW COMES** Plaintiffs Katherine Payne, Maureen Baum, and Jane K.R. Doe ("Plaintiffs"), by and through their attorneys, McKeen & Associates, and for their Complaint states and alleges:

## I.    PRELIMINARY STATEMENT

1. This is a civil action for declaratory, injunctive, equitable, and monetary relief for injuries sustained by Plaintiffs as a result of the acts and omissions of Lawrence Nassar, D.O. ("Nassar"), Michigan State University ("MSU"), the Board of Trustees of Michigan State University, USA Gymnastics, Inc. ("USAG"), and Twistars USA, Inc. ("Twistars") and their respective employees, representatives, and agents, relating to sexual assault, abuse, molestation, and nonconsensual sexual touching and harassment by Defendant Nassar against Plaintiffs, who were minors.

## II.     JURISDICTION AND VENUE

2. Plaintiffs reallege and incorporates by reference the allegations contained in the preceding paragraph.

3. This action is brought pursuant to Title IX of the Educational Amendments of 1972, 20 U.S.C. § 1681, *et seq.*, as more fully set forth herein.

4. This is also an action to redress the deprivation of Plaintiffs' constitutional rights under the Fourteenth Amendment of the United States Constitution pursuant to 42 U.S.C. § 1983.

5. Subject matter jurisdiction is founded upon 28 U.S.C. § 1331 which grants subject matter jurisdiction to district courts over all civil actions arising under the Constitution, laws, and treaties of the United States.

6. Subject matter jurisdiction is also founded upon 28 U.S.C. § 1343 which grants subject matter jurisdiction to district courts over any civil actions authorized by law to be brought by any person to redress the deprivation, under color of any State Law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States, and any civil action to recover damages

or to secure equitable relief under any Act of Congress providing for the protection of civil rights.

7. Subject matter jurisdiction is also founded upon 28 U.S.C. § 1332 as it relates to Plaintiffs' claims against Defendant USAG for the reason that 28 U.S.C. § 1332 grants subject matter jurisdiction to district court over all civil actions where the amount in controversy is greater than $75,000.00, exclusive of interest and costs, and the parties are citizens of different states.

8. Plaintiffs further invoke the supplemental jurisdiction of this Court, pursuant to 28 U.S.C. § 1367(a) to hear and decide all claims arising under Michigan state law that are so related to the claims within the original jurisdiction of this Court that they form part of the same case or controversy.

9. Plaintiffs' claims are cognizable under the United States Constitution, 42 U.S.C. § 1983, 20 U.S.C. §1681 *et seq*., and under Michigan law.

10. The events giving rise to Plaintiffs' complaint occurred in Ingham County, Michigan which sits in the Southern Division of the Western District of Michigan.

11. Venue is proper in the United States District Court for the Western District of Michigan, pursuant to 28 U.S.C. § 1391(b)(2), in that this is the judicial district in which the events giving rise to the claim occurred.

12. Because Michigan State University is a public university organized and existing under the laws of the State of Michigan, and Michigan statutory law requires parties to file a Notice of Intention to File Claim in order to maintain any action against the state, in satisfaction of M.C.L. § 600.6431, Plaintiffs filed a Notice of Intent to File Claim with the Michigan Court of Claims on December 29, 2016 and May 12, 2017. (Exhibit 1).

### III.   PARTIES

13. Plaintiffs reallege and incorporate by reference the allegations in the preceding paragraphs.

14. Plaintiff Katherine Payne is an adult female resident of California.

15. Plaintiff Maureen Baum is an adult female resident of Tennessee.

16. Plaintiff Jane K.R. Doe is an adult female resident of Michigan.

17. Plaintiff Jane K.R. Doe's name has been withheld from this Complaint to protect Plaintiff's identity as this action involves sexual abuse.[1]

18. Defendant Lawrence Nassar (hereinafter "Nassar"), is a Doctor of Osteopathic Medicine and is a resident of Michigan.

19. From approximately 1996 to 2016, Nassar worked for Defendant Michigan State University in various positions and capacities.

20. From 1986 to approximately 2015, Nassar also worked for Defendant USA Gymnastics in various positions and capacities.

21. Defendant Michigan State University (hereinafter "MSU") was at all relevant times and continues to be a public university organized and existing under the laws of the State of Michigan.

22. MSU receives federal financial assistance and is therefore subject to Title IX of the Educational Amendments of 1972, 20 U.S.C. § 1681(a).

23. Defendant The Board of Trustees of Michigan State University (hereinafter "MSU Trustees") is the governing body for Michigan State University.

24. Defendant MSU and Defendant MSU Trustees are hereinafter collectively referred to as the

---

[1] Plaintiff will seek an Order of the Court regarding disclosure of Plaintiff and Jane R.L. Doe's identities and the conditions for disclosure.

MSU Defendants.

25. Lou Anna K. Simon is the current President of Defendant MSU, appointed in approximately January 2005. Prior to her appointment as President, Defendant Simon held several administrative roles including assistant provost for general academic administration, associate provost, and provost and vice president for academic affairs during her career with MSU.

26. M. Peter McPherson is the immediate Past President of Defendant MSU and served as President from approximately 1993 – 2004.

27. William D. Strampel, D.O. is the Dean of the College of Osteopathic Medicine at MSU, serving as Dean since approximately April 2002 and as Acting Dean between December 2001 and April 2002.

28. Jeffrey R. Kovan, D.O. is or was the Director of Division of Sports Medicine at MSU.

29. Defendant United States of America Gymnastics (hereinafter "USAG") was and continues to be an organization incorporated in Indiana, authorized to conduct business and conducting business throughout the United States, including the State of Michigan.

30. Steve Penny is the current president of USAG, named in approximately April 2005, who is currently responsible for the overall management and strategic planning of USAG.

31. Robert Colarossi is the past president of USAG and held the position from approximately 1998 to 2005 and during that time was responsible for overall management and strategic planning of USAG.

32. Defendant Twistars USA, Inc. d/b/a Gedderts' Twistars Gymnastics Club USA (hereinafter "Twistars") was and continues to be an organization incorporated in Michigan.

33. John Geddert was at all relevant times and still is the owner and operator of Twistars.

## IV.    FACTUAL ALLEGATIONS

34. Plaintiffs reallege and incorporate by reference the allegations in the preceding paragraphs.

35. At all relevant times, Nassar maintained an office at MSU in East Lansing, Michigan.

36. At all relevant times, MSU, MSU Trustees, and Nassar were acting under color of law, specifically under color of statutes, ordinances, regulations, policies, customs, and usages of the State of Michigan or MSU.

37. At all relevant times, Nassar was acting in the scope of his employment or agency with MSU.

38. At all relevant times, Nassar was acting in the scope of his employment or agency with USAG.

39. At all relevant times, Nassar was acting in the scope of his employment or agency with Twistars.

40. Nassar graduated from Michigan State University with a Doctor of Osteopathic Medicine degree in approximately 1993.

41. From approximately 1998 to 2015, Nassar was employed by USAG in various positions, including the following positions: (a) Certified Athletic Trainer; (b) Osteopathic Physician; (c) National Medical Director; (d) National Team Physician, USA Gymnastics; and (e) National Team Physician, USA Gymnastics Women's Artistic Gymnastics National Team.

42. From approximately 1996 to 2016, Nassar was employed by MSU in various positions, including the following positions: (a) Associate Professor, MSU's Division of Sports Medicine, Department of Radiology, College of Osteopathic Medicine; (b) Team Physician, MSU's Men's and Women's Gymnastics Teams; (c) Team Physician, MSU's Men's and Women's Track Field Teams; (d) Team Physician, MSU's Men's and Women's Crew Teams; (e) Team Physician, MSU's Intercollegiate Athletics; (f) Medical Consultant,

MSU's Wharton Center for the Performing Arts; and (g) Advisor, Student Osteopathic Association of Sports Medicine.

43. Twistars is a gymnastics facility with which Nassar was affiliated since approximately 1996.

44. John Geddert ("Geddert") served as the USA World and Olympic Women's Gymnastics Team Head Coach.

45. Geddert regularly recommended Nassar as a reputable physician to athletes who trained at Twistars.

46. Twistars displayed at least one photograph of Nassar at its facility for an extended period of time.

47. Nassar acted as an agent of Twistars and regularly provided services or treatment to Twistars' members and to USAG members that trained at Twistars' facility.

48. Nassar is a doctor of osteopathic medicine and has never been a doctor of obstetrics or gynecology.

49. While employed by MSU and USAG, Nassar practiced medicine at MSU's Sports Medicine Clinic, which is located on MSU's East Lansing, Michigan campus.

50. During Nassar's employment, agency, and representation with the MSU Defendants, USAG, and Twistars, Nassar sexually assaulted, battered, abused, and molested Plaintiff Katherine Payne by touching her genital area and digitally penetrating her vagina and anus without Plaintiff's consent and without the consent of Plaintiff's parents.

51. During Nassar's employment, agency, and representation with the MSU Defendants, USAG, and Twistars, Nassar sexually assaulted, battered, abused, and molested Plaintiff Maureen Baum by touching her genital area and digitally penetrating her vagina and anus without Plaintiff's consent and without the consent of Plaintiff's parents.

52. During Nassar's employment, agency, and representation with the MSU Defendants, USAG, and Twistars, Nassar sexually assaulted, battered, abused, and molested Plaintiff Jane K.R. Doe by touching her genital area and digitally penetrating her vagina and anus without Plaintiff's consent and without the consent of Plaintiff's parents.

53. In 1996 Plaintiff Katherine Payne was a vibrant 14-year-old elite gymnast training at the Artistic Gymnastic Academy.

54. Plaintiff Katherine Payne's injury is not uncommon in gymnastics and Katherine had been treating with a sports medicine doctor for other injuries.

55. However, her coaches recommended she make an appointment with Defendant Nassar for her back pain.  Plaintiff Katherine Payne knew ten to fifteen other gymnasts who were treating with Defendant Nassar.

56. On her coach's recommendation, and on the reputation of Defendant Nassar, Katherine's parents made an appointment.

57. Defendant Nassar was a renowned orthopedic sports medicine physician, well respected in the gymnastics community and the team doctor of the United States Gymnastics team.

58. Defendant Nassar was promoted as the team doctor and received patients because of his status as team doctor.

59. Katherine and her parents had no reason to suspect Defendant Nassar was anything but a competent respectable physician.

60. Katherine saw Defendant Nassar for the first time, on or about, late 1996 or early 1997.

61. Defendant Nassar diagnosed Katherine's lower back pain and agreed to treat her.

62. Defendant Nassar did not discuss what his "treatments" would be with Katherine or her parents.

63. Over the course of the next 3 years Katherine saw Defendant Nassar about once every 6 weeks.

64. Beginning with Katherine's second visit Defendant Nassar began to "groom" Katherine.

65. Katherine was young, impressionable and sexually inexperienced. She had never been intimate with a member of the opposite sex.

66. As a young woman, Katherine implicitly trusted her doctor.

67. Under the guise of "treatment" Defendant Nassar subjected Katherine to inappropriate, nonconsensual sexual touching.

68. Defendant Nassar used his position of authority as a medical professional to abuse Katherine.

69. Defendant Nassar would always see Katherine alone.

70. Defendant Nassar told Katherine her whole body was connected; her hips and lower body were all connected. He could "treat" her lower back pain by working on her lower body.

71. Defendant Nassar would then tell Katherine to open her legs.

72. He would massage Katherine's labia and insert his fingers into her vagina or anus. Defendant Nassar would not wear gloves and used a "massage cream" as lubricant.

73. Defendant Nassar repeatedly told Katherine his "treatments" were medically recognized to reduce lower back pain.

74. Defendant Nassar routinely claimed he was releasing tension and relaxing muscles.

75. Defendant Nassar would perform his "treatments" for the entire length of the appointment, occasionally for near an hour.

76. If Katherine's parents were in the room Defendant Nassar would purposefully block their view and sexually assault Katherine for a short period before conducting feigned "traditional" treatments.

77. Defendant Nassar would often refer to the inappropriate, nonconsensual sexual touching as a "full treatment."

78. Katherine was "treated" by Defendant Nassar at an offsite facility during a gymnastics tournament and noticed a marked changed in Defendant Nassar's behavior.  At the time, Katherine was uncertain why Defendant Nassar was acting strangely but the "full treatment" lasted over an hour.

79. Katherine now knows Defendant Nassar was sexually aroused during the interaction.

80. Katherine discontinued treating with Defendant Nassar when her gymnastics career ended.

81. Katherine did not, and her parents did not, suspect any sexual assault had occurred.

82. Defendant Nassar was a well-respected physician, he repeatedly told Katherine he was performing a recognized treatment for back pain.  Defendant Nassar never discussed the treatment with Katherine's parents and he took careful steps to ensure he was always alone with Katherine.

83. Defendant Nassar perpetrated this fraud for over 20 years.

84. As a sexually inexperienced teenager Katherine had no reason and no way to know what was happening to her.

85. Katherine could not have known Defendant Nassar was a serial pedophile who carefully selected and groomed his victims.

86.  Katherine subconsciously carried the effects of Defendant Nassar's abuse throughout her entire life.

87. Katherine began to realize what had been done to her when other victims began to come forward.

88. Katherine faced the realization Defendant Nassar had never been performing medical treatments but sexually assaulting her.

89. The veil of fraud and intentional concealment finally lifted and Katherine understood exactly what she had been through.

90. Katherine was forced to relive the trauma of sexual assault as she came to grips with everything she had experienced.

91. Plaintiff has never been able to live a healthy normal life because of the years of sexual abuse Plaintiff suffered at the hands of Defendant Nassar.  Subconsciously Katherine has always been effected by the abuse.

92. Katherine suffers from anxiety, depression and a host of other issues.

93. Katherine must face daily pain and suffering as she goes through the process of documenting all the actions of Defendant Nassar.

94. Katherine was deprived a normal childhood and is now being deprived of a normal life, all because of Defendant's conduct.

95. In 1997 Maureen Baum was a vibrant 12-year-old elite gymnast training at the Artistic Gymnastic Academy.

96. Maureen suffered from common gymnastics injures, including back pain, and sought treatment from a sport medicine physician.

97. Defendant Larry Nassar was recommended to Maureen's parents as a well-known sports medicine doctor in the gymnastic community.

98. On recommendation, and on the reputation of Defendant Nassar, Maureen's parents made an appointment.

99. Defendant Nassar was a renowned orthopedic sports medicine physician, well respected in the gymnastics community and the team doctor of the United States Gymnastics team.

100. Defendant Nassar was promoted as the US team doctor and received patients because of his status as team doctor.

101. Maureen and her parents had no reason to suspect Defendant Nassar was anything but a competent respectable physician.

102. Maureen saw Defendant Nassar for the first time, on or about, late 1997 or early 1998.

103. Defendant Nassar diagnosed Maureen's pain and agreed to treat her.

104. Defendant Nassar did not discuss what his "treatments" would be with Maureen or her parents.

105. Maureen treated with Defendant Nassar multiple times.

106. Defendant Nassar sexually assaulted Maureen at each visit.

107. Maureen f was young, impressionable and sexually inexperienced. Maureen had never been intimate with a member of the opposite sex.

108. As a young girl, Maureen implicitly trusted her doctor.

109. Under the guise of "treatment" Defendant Nassar subjected Maureen to inappropriate, nonconsensual sexual touching.

110. Defendant Nassar used his position of authority as a medical professional to abuse Maureen.

111. Defendant Nassar saw Maureen alone.

112. Defendant Nassar told Maureen her whole body was connected; her hips and lower body were all connected. He could "treat" her lower back pain by working on her lower body.

113. Defendant Nassar would then tell Maureen to open her legs.

114. He would massage Maureen's labia and insert his fingers into her vagina or anus. Defendant Nassar would not wear gloves and used a "massage cream" as lubricant.

115. Defendant Nassar repeatedly told Maureen his "treatments" were medically recognized to reduce lower back pain.

116. Defendant Nassar routinely claimed he was releasing tension and relaxing muscles.

117. Defendant Nassar would perform his "treatments" for the entire length of the appointment.

118. Maureen's father was in the room on one occasion and Defendant Nassar purposefully blocked his view and sexually assaulted Maureen for a short period before conducting feigned "traditional" treatments.

119. Defendant Nassar would often refer to the inappropriate, nonconsensual sexual touching as a "full treatment."

120. Maureen did not, and her parents did not, suspect any sexual assault had occurred.

121. Defendant Nassar was a well-respected physician, he repeatedly told Maureen he was performing a recognized treatment for back pain.  Defendant Nassar never discussed the treatment with Maureen's parents and he took careful steps to ensure he was always alone with Maureen.

122. Defendant Nassar perpetrated this fraud for over 20 years.

123. As a sexually inexperienced teenager Maureen had no reason and no way to know what was happening to her.

124. Maureen could not have known Defendant Nassar was a serial pedophile who carefully selected and groomed his victims.

125. Maureen subconsciously carried the effects of Defendant Nassar's abuse throughout her entire life.

126. Maureen began to realize what had been done to her when other victims began to come forward.

127. Maureen faced the realization Defendant Nassar had never been performing medical treatments but sexually assaulting her.

128. The veil of fraud and intentional concealment finally lifted and Maureen understood exactly what she had been through.

129. Maureen was forced to relive the trauma of sexual assault as she came to grips with everything she had experienced.

130. Maureen has never been able to live a fully normal life because of the years of sexual abuse she suffered at the hands of Defendant Nassar. Subconsciously, Maureen has always been effected by the abuse.

131. Maureen must face daily pain and suffering as she goes through the process of documenting all the actions of Defendant Nassar.

132. Maureen was deprived a normal childhood and is now being deprived of a normal life, all because of Defendant's conduct.

133. Plaintiff Jane K.R. Doe began training at Twistars as a young gymnast in 1997. She trained at Twistars until 2003.

134. Defendant Nassar was Twistar's team doctor during Plaintiff's time at the gym. She first met Defendant Nassar when she was 6 years old and training at Twistars.

135. She was a member of USA Gymnastics while competing for Twistars.

136. Plaintiff suffered a hamstring injury in early 2001, near her 12th birthday.

137. She was sent to Defendant Nassar for treatment of the hamstring injury. Twistar's sent Plaintiff to Defendant Nassar for treatment.

14

138. Plaintiff's injury is not uncommon in gymnastics and Plaintiff expected Defendant Nassar to treat the injury.

139. Her coaches recommended Plaintiff treat with Defendant Nassar.

140. On her coach's recommendation, and on the reputation of Defendant Nassar, Plaintiff began treatment with Defendant Nassar in 2001.

141. Defendant Nassar was a renowned orthopedic sports medicine physician, well respected in the gymnastics community and the team doctor of the United States Gymnastics team.

142. Defendant Nassar was promoted as the team doctor and received patients because of his status as team doctor.  Including, Plaintiff Jane K.R. Doe.

143. Plaintiff and her parents had no reason to suspect Defendant Nassar was anything but a competent respectable physician.

144. Plaintiff saw Defendant Nassar for the hamstring injury in early 2001.

145. Defendant Nassar diagnosed Plaintiff's hamstring injury and agreed to treat her.

146. Defendant Nassar did not discuss what his "treatments" would be with Plaintiff or her parents.

147. Over the course of the next 2 years Plaintiff saw Defendant Nassar about once a month.

148. Beginning with Plaintiff's first visit Defendant Nassar began to "groom" Plaintiff.

149. Plaintiff was young, impressionable and sexually inexperienced.  Plaintiff had never been intimate with a member of the opposite sex.  She was only 12 years old.

150. As a young woman, Plaintiff implicitly trusted her doctor.

151. Under the guise of "treatment" Defendant Nassar subjected Plaintiff to inappropriate, nonconsensual sexual touching.

152. Defendant Nassar used his position of authority as a medical professional to abuse Plaintiff.

153. Plaintiff was taken to the appointments by her grandfather from 2001 to 2003.

154. Defendant Nassar would always see Plaintiff alone.

155. Defendant Nassar told Plaintiff her whole body was connected; her hips and lower body were all connected.  He could "treat" her lower hamstring by working on her lower body.

156. Defendant Nassar would then tell Plaintiff to open her legs.

157. He would massage Plaintiff's labia and insert his fingers into her vagina or anus.  Defendant Nassar would not wear gloves and used a "massage cream" as lubricant.

158. He never obtained any form of consent from the Plaintiff.

159. Defendant Nassar repeatedly told Plaintiff his "treatments" were medically recognized.

160. Defendant Nassar routinely claimed he was releasing tension and relaxing muscles.

161. Defendant Nassar would perform his "treatments" throughout Plaintiff's appointment.

162. Defendant Nassar would often refer to the inappropriate, nonconsensual sexual touching as a "full treatment."

163. Plaintiff's father began taking her to the appointments in 2003.  The sexual abuse stopped in 2003 and Plaintiff discontinued treating with or seeing Defendant Nassar.

164. Plaintiff did not, and her parents did not, suspect any sexual assault had occurred.

165. Plaintiff did not know what was happening to her and, as a young girl, was very confused.

166. She was sexual assaulted by Defendant Nassar once a month for two years.

167. Defendant Nassar was a well-respected physician, he repeatedly told Plaintiff he was performing a recognized treatment.  Defendant Nassar never discussed the treatment with Plaintiff's parents and he took careful steps to ensure he was always alone with Plaintiff.

168. Defendant Nassar perpetrated this fraud for over 20 years.

169. As a sexually inexperienced teenager Plaintiff had no reason and no way to know what was happening to her.

170. Plaintiff could not have known Defendant Nassar was a serial pedophile who carefully selected and groomed his victims.

171. Plaintiff subconsciously carried the effects of Defendant Nassar's abuse throughout her entire life.

172. Plaintiff began to realize what had been done to her when other victims began to come forward.

173. Plaintiff faced the realization Defendant Nassar had never been performing medical treatments but sexually assaulting her.

174. The veil of fraud and intentional concealment finally lifted and Plaintiff understood exactly what Plaintiff had been through.

175. Plaintiff was forced to relive the trauma of sexual assault as Plaintiff came to grips with everything Plaintiff had experienced.

176. Plaintiff has never been able to live a healthy normal life because of the years of sexual abuse Plaintiff suffered at the hands of Defendant Nassar.  Subconsciously Plaintiff has always been effected by the abuse.  Plaintiff still suffers from panic attacks because of the assault.

177. Plaintiff suffers from anxiety, depression and a host of other issues.

178. Plaintiff must face daily pain and suffering as Plaintiff goes through the process of documenting all the actions of Defendant Nassar.

179. Plaintiff was deprived a normal childhood and is now being deprived of a normal life, all because of Defendant's conduct.

180. The State of Michigan Department of Licensing and Regulatory Affairs has promulgated rules related to Occupational Health Standards to prevent the spread of bloodborne infectious diseases, including rules mandating the use of gloves when there is a possible exposure to vaginal secretions. Michigan Administrative Code, R. 325.70001 *et seq*.

181. Nassar's decision to willfully violate these rules by not wearing gloves is indicative of his motive for self-gratification in his sexual abuse of Plaintiffs.

182. Plaintiffs did not treat and never intended to treat with Nassar for OB/GYN issues.

183. Nassar did not give prior notice or obtain consent for digital vaginal penetration from Plaintiffs or Plaintiffs' parents even though they were minors.

184. Neither Plaintiffs nor Plaintiffs' parents consented to any touching, rubbing, or digital penetration of Plaintiffs' vagina or anus.

185. Nassar's conduct and actions taken against Plaintiffs constituted sexual assault, battery, abuse, and molestation and were undertaken for Nassar's pleasure and self-gratification.

186. Nassar used his position of trust and confidence in an abusive manner causing Plaintiffs to suffer a variety of injuries including shock, humiliation, emotional distress and the related physical manifestations thereof, embarrassment, loss of self-esteem, disgrace, and loss of enjoyment of life.

187. Plaintiffs and their parents had no reason to suspect Nassar was anything other than a competent and ethical physician.

188. For over 20 years, Nassar had unrestricted and unmonitored access to young female athletes through the Sports Medicine Clinic at MSU, USAG, and Twistars, who all regularly and routinely referred young female athletes to his care.

189. In 1999, an MSU student athlete reported to trainers and her coach, who were both

employees of MSU, concerns about Nassar's conduct and "treatment," yet MSU failed to take any action in response to her complaints.

190. In 2000, another MSU student athlete reported to trainers concerns about Nassar's conduct and "treatment," yet again MSU failed to take any action in response to her complaints.

191. Additional complaints regarding Nassar's conduct surfaced in 2014. A victim reported she had an appointment with Nassar to address hip pain and was sexually abused and molested by Nassar when he cupped her buttocks, massaged her breast and vaginal area, and became sexually aroused.[2]

192. Upon information and belief, MSU investigated the 2014 complaints through its Office of Institutional Equity, and some critical facts were omitted from the investigative report including the fact that Nassar was sexually aroused while touching her and that the complainant's appointment with Nassar did not end until she physically removed his hands from her body.

193. Three months after initiating the investigation, the victim's complaints were dismissed and MSU determined the complainant did not understand the "nuanced difference" between sexual assault and an appropriate medical procedure and deemed Nassar's conduct "medically appropriate" and "[n]ot of a sexual nature."[3]

194. Following the investigation, upon information and belief, Nassar became subject to new institutional guidelines at MSU, one of which was that Defendant Nassar was not to examine or treat patients alone.

---

[2] *See* Matt Mencarini, *At MSU: Assault, Harassment and Secrecy*, LANSING STATE JOURNAL (Dec. 15, 2016), http://www.lansingstatejournal.com/story/news/local/2016/12/15/michigan-state-sexual-assault- harassment-larry-nassar/94993582/.

[3] *Id.*

195. Nassar ignored or otherwise refused to comply with these guidelines and continued to treat patients alone, and MSU did not take appropriate measures to ensure that these institutional guidelines were enforced and adhered to.

196. As early as 1999, and possibly earlier, representatives of MSU were made aware of Nassar's conduct, yet failed to appropriately respond to allegations, resulting in the sexual assault, abuse, and molestation of other young athletes through approximately 2016.

197. MSU's deliberate indifference before, during, and after the sexual assault, abuse, and molestation of Plaintiff was in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.*, 42 U.S.C. § 1983, as well as other Federal and State laws.

198. MSU's failure to properly supervise Nassar and its negligence in retaining Nassar was in violation of Michigan common law.

199. In late November 2016, Defendant Nassar was arrested and charged in Ingham County, Michigan on three charges of first-degree criminal sexual conduct with a person under 13.[4]

200. In mid-December 2016, Defendant Nassar was indicted, arrested, and charged in the United States District Court for the Western District of Michigan in Grand Rapids, Michigan on charges of possession of child pornography and receipt/attempted receipt of child pornography.

201. On or about February 7, 2017, Nassar was indicted an additional child pornography related charge in the United States District Court for the Western District of Michigan in Grand

---

[4] State of Michigan, Ingham County 55th District Court Case No. 16-03031-FY.

Rapids, Michigan.[5]

202. On February 17, 2017, a preliminary examination was held on Nassar's criminal charges in 55th District Court Case No. 16-03031-FY in Ingham County, Michigan, and, following the testimony of the victim, the 55th District Court found probable cause to believe that Nassar had committed the charged offenses and bound that matter over to the circuit court for trial.

203. On February 22, 2017, Michigan Attorney General Bill Schuette announced that his office had charged Nassar with 22 additional counts of first-degree criminal sexual conduct based on Nassar's sexual assaults on 9 different victims in Ingham County, Michigan and Eaton County, Michigan.[6]

204. The acts, conduct, and omissions of Defendants Michigan State University and Twistars, and their policies, customs, and practices with respect to investigating sexual assault allegations severely compromised the safety and health of Plaintiffs and an unknown number of individuals, and have resulted in repeated instances of sexual assault, abuse, and molestation of Plaintiffs by Nassar, which has been devastating for the Plaintiffs and their families.

205. This action arises from Defendants' blatant disregard for Plaintiffs' federal and state rights, and Defendants' deliberately indifferent and unreasonable response to physician-on-patient/physician-on-student/physician-on-athlete sexual assault, battery, abuse, and

---

[5] *See* Matt Mencarini, *Feds: Nassar had computer files destroyed*, LANSING STATE JOURNAL (Feb. 7, 2017), http://www.lansingstatejournal.com/story/news/local/2017/02/07/feds-nassar-had-computer-files-destroyed/97612044/.
[6] *See* Matt Mencarini, *Schuette: Nassar is 'a monster' and more charges coming*, LANSING STATE JOURNAL (Feb. 22, 2017), http://www.lansingstatejournal.com/story/news/local/2017/02/22/former-msu-doctor-larry-nassar-faces-23-new-sexual-assault-charges/98220438/.

molestation.

### V.      CLAIMS AGAINST MICHIGAN STATE UNIVERSITY DEFENDANTS

A.  COUNT ONE – VIOLATIONS OF TITLE IX, 20 U.S.C. § 1681(a) *et seq.*, AS TO
DEFENDANTS MSU AND MSU TRUSTEES

206. Plaintiffs reallege and incorporate by reference the allegations contained in the preceding

paragraphs.

207. "No *person* in the United States shall on the basis of sex, be . . . subject to discrimination

under any education program or activity receiving Federal financial assistance . . . ." 20

U.S.C. § 1681(a) (emphasis added).

208. "Title IX also protects third parties from sexual harassment or violence in a school's

education programs and activities." U.S. Dept. of Ed., Office of Civil Rights, Dear Colleague

Letter:      Sexual      Violence,      Apr.4,      2011,      at      4      n11,

https://www2.ed.gov/print/about/offices/list/ocr/letters/colleague-201104.html (last visited

Jan. 25, 2017).

209. Plaintiffs are a "person" within the meaning of 20 U.S.C. § 1681(a).

210. MSU receives federal financial assistance for its education program and is therefore subject

to the provisions of Title IX of the Education Act of 1972, 20 U.S.C. § 1681 *et seq.*

211. MSU is required under Title IX to investigate allegations of sexual assault, sexual abuse,

and sexual harassment, including, specifically, allegations that sexual abuse, sexual assault,

or sexual harassment has been committed by an employee. U.S. Dept. of Ed., Office of Civil

Rights, Questions and Answers on Title IX and Sexual Violence, Apr. 29, 2014, at 1, 3,

https://www2.ed.gov/about/offices/list/ocr/docs/qa-201404-title-ix.pdf.

212. Nassar's actions and conduct were carried out under one of MSU's programs, which

provides medical treatment to students, athletes, and the public.

213. Nassar's actions and conduct toward Plaintiffs of nonconsensual sexual assault, battery, and molestation, which includes unconsented touching and rubbing of Plaintiffs' genitalia and unconsented digital penetration of Plaintiffs' vagina and anus, constitute sex discrimination under Title IX.

214. As early as 1999, and possibly earlier, an appropriate person at MSU had knowledge of acts committed by Nassar that constituted sex discrimination under Title IX.

215. MSU failed to carry out its duties to investigate and take corrective action under Title IX.

216. The MSU Defendants were notified again in 2014 that Nassar had committed acts that constituted sex discrimination under Title IX when a victim reported that she had an appointment with Nassar to address hip pain and was sexually assaulted by Nassar when he cupped her buttocks, massaged her breast and vaginal area, and became sexually aroused.

217. MSU's investigative report regarding the 2014 acts omitted certain key facts that were reported by the victim, such as the fact that Nassar was sexually aroused while touching her and that the victim had to physically remove Nassar's hands from her body to end the appointment.

218. After the investigation, MSU Defendants determined that the victim had only experienced appropriate medical treatment and not sexual assault and dismissed her complaint.[7]

219. The MSU Defendants failed to adequately supervise Defendant Nassar even though MSU had actual knowledge that Nassar posed a substantial risk of additional sexual abuse of females to whom he had unfettered access.

220. After the 1999, 2000, and 2014 complaints Defendant Nassar continued to sexually assault,

---

[7] *See* Matt Mencarini, *At MSU: Assault, Harassment and Secrecy*, LANSING STATE JOURNAL (Dec. 15, 2016), http://www.lansingstatejournal.com/story/news/local/2016/12/15/michigan-state-sexual-assault- harassment-larry-nassar/94993582/.

abuse, and molest individuals.

221. The MSU Defendants acted with deliberate indifference to known acts of sexual assault, abuse, and molestation on its premises by:

    a. failing to investigate and address complaints against Defendant Nassar of sexual assault in 1999 and 2000 as required by Title IX;

    b. failing to appropriately supervise Defendant Nassar;

    c. failing to adequately investigate and address the 2014 complaint regarding Defendant Nassar's conduct; and,

    d. failing to institute corrective measures to prevent Defendant Nassar from violating and sexually abusing other students and individuals, including minors.

222. The MSU Defendants acted with deliberate indifference and in a clearly unreasonable manner by failing to respond to the allegations of sexual assault, abuse, and molestation in light of the known circumstances, Defendant Nassar's conduct toward female athletes, and his access to young girls and young women.

223. The MSU Defendants' deliberate indifference is further confirmed by the Department of Education's investigation into MSU's handling of sexual assault and relationship violence allegations, which revealed:

    a. That the MSU Defendants' failure to adequately respond to allegations of sexual assault created a sexually hostile environment and affected numerous students and staff on MSU's campus;

    b. That the MSU Defendants' failure to address complaints of sexual violence in a prompt and equitable manner caused and may have contributed to a continuation of

the sexually hostile environment.[8]

224. The MSU Defendants' responses were clearly unreasonable as Defendant Nassar continued to sexually assault female athletes and other individuals until he was discharged from the University in 2016.

225. The MSU Defendants' failure to promptly and appropriately investigate and remedy the 1999, 2000, and 2014 complaints of sexual assault resulted in Plaintiff Jane K.R. Doe being subject to further harassment and a sexually hostile environment, effectively denying her access to educational opportunities at MSU, including medical care.

226. As a direct and/or proximate result of the MSU Defendants' actions and inactions, Plaintiffs suffered discomfort and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity.

## B.  COUNT TWO – VIOLATIONS OF CIVIL RIGHTS, 42 U.S.C. § 1983, AS TO DEFENDANTS MSU AND MSU TRUSTEES AND DEFENDANT NASSAR

227. Plaintiffs re-allege and incorporate by reference the allegations contained in the preceding paragraphs.

228. Plaintiffs, as females, are a member of a protected class under the Equal Protection Clause of the Fourteenth Amendment to the United States.

229. Plaintiffs enjoy the constitutionally protected Due Process right to be free from the invasion

---

[8] *See* Letter from U.S. Department of Education, Office for Civil Rights to Michigan State University, OCR Docket #15-11-2098, #15-14-2113 (Sept. 1, 2015), https://www2.ed.gov/documents/press-releases/michigan-state-letter.pdf, last accessed January 4, 2017.

of bodily integrity through sexual assault, abuse, or molestation.

230. At all relevant times, Defendants MSU, MSU Trustees, and Nassar were acting under color of law, to wit, under color of statutes, ordinances, regulations, policies, customs, and usages of the State of Michigan and/or Defendant Michigan State University.

231. The acts as alleged above amount to a violation of these clearly established constitutionally protected rights, of which reasonable persons in the MSU Defendants' positions should have been aware.

232. The MSU Defendants have the ultimate responsibility and authority to train and supervise its employees, agents, and representatives, in the appropriate manner of detecting, reporting, and preventing sexual abuse, assault, and molestation and as a matter of acts, custom, policy, and/or practice failed to do so with deliberate indifference.

233. As a matter of custom, policy, and and/or practice, the MSU Defendants have the ultimate responsibility and authority to investigate complaints against their employees, agents, and representatives from all individuals including, but not limited to, students, visitors, faculty, staff, or other employees, agents, and representatives, and failed to do so with deliberate indifference.

234. The MSU Defendants had a duty to prevent sexual assault, abuse, and molestation on their campus and premises, that duty arising under the above-referenced constitutional rights, as well as established rights pursuant to Title IX.

235. Defendant MSU's internal policies provide that "[a]ll University employees . . . are expected to promptly report sexual misconduct or relationship violence that they observe or learn about and that involves a member of the University community (faculty, staff or student) or occurred at a University event or on University property." They state further that

"[t]he employee must report all relevant details about the alleged relationship violence or sexual misconduct that occurred on campus or at a campus-sponsored event."[9]

236. This policy was violated when a victim reported sexual assault, abuse, and molestation by Defendant Nassar to MSU representatives including trainers and a coach and no action was taken to address her complaints.

237. Defendant MSU's internal policies were again violated in 2000 when another victim reported sexual assault, abuse, and molestation by Defendant Nassar to MSU representatives including trainers and no action was taken to address her complaints.

238. The MSU Defendants' failure to address complaints led to an unknown number of individuals being victimized, sexually assaulted, abused, and molested by Defendant Nassar.

239. Additionally, the MSU Defendant's failure to properly address the 2014 complaint regarding Defendant Nassar's conduct also led to others being victimized, sexually assaulted, abused and molested by Defendant Nassar.

240. Ultimately, Defendants failed to adequately and properly investigate complaints, including but not limited to failing to:

    a.  perform a thorough investigation into improper conduct by Defendant Nassar after receiving complaints;

    b.  properly monitoring Defendant Nassar;

    c.  thoroughly review and investigate all policies, practices, procedures and training materials related to the circumstances surrounding the conduct of Defendant Nassar;

---

[9] Michigan State University, *University Policy on Relationship Violence & Sexual Misconduct* 19-20, https://www.hr.msu.edu/documents/uwidepolproc/RVSMPolicy.pdf.

d. recognize sexual assault when reported in 2014 and permitting University officials to deem sexual assault as "medically appropriate" and "not of a sexual nature;" and

e. ensure all institutional guidelines issued following the 2014 investigation into Defendant Nassar's conduct were satisfied.

241. As indicated in the U.S. Department of Education Office of Civil Rights report,[10] the MSU Defendants allowed a sexually hostile environment to exist, affecting numerous individuals on Defendant MSU's campus, including Plaintiffs.

242. As also discussed in the report, Defendant MSU's custom, practice, and/or policy of failing to address complaints of sexual harassment, including sexual violence in a prompt and equitable manner which caused and may have contributed to a continuation of the sexually hostile environment.

243. By failing to prevent the aforementioned sexual assault, abuse, and molestation upon Plaintiffs, and by failing to appropriately respond to reports of Defendant Nassar's sexual assault, abuse, and molestation in a manner that was so clearly unreasonable it amounted to deliberate indifference, the MSU Defendants are liable to Plaintiff pursuant to 42 U.S.C. § 1983.

244. The MSU Defendants are also liable to Plaintiffs under 42 U.S.C. § 1983 for maintaining customs, policies, practices which deprived Plaintiffs of rights secured by the Fourteenth Amendment to the United States Constitution.

245. The MSU Defendants tolerated, authorized and/or permitted a custom, policy, practice or

---

[10] *See* Letter from U.S. Department of Education, Office for Civil Rights to Michigan State University, OCR Docket #15-11-2098, #15-14-2113 (Sept. 1, 2015), https://www2.ed.gov/documents/press-releases/michigan-state-letter.pdf, last accessed January 4, 2017.

procedure of insufficient supervision and failed to adequately screen, counsel, or discipline Defendant Nassar, with the result that Defendant Nassar continued to violate the rights of persons such as Plaintiffs with impunity.

246. As a direct and/or proximate result of the MSU Defendants' actions and/or inactions, Plaintiffs suffered discomfort and continues to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity.

## C. COUNT THREE – FAILURE TO TRAIN AND SUPERVISE, IN VIOLATION OF 42 U.S.C. § 1983, AS TO DEFENDANTS MSU AND MSU TRUSTEES

247. Plaintiffs reallege and incorporate by reference the allegations contained in the preceding paragraphs.

248. The MSU Defendants have the ultimate responsibility and authority to train and supervise its employees, agents, and/or representatives including Defendant Nassar and all faculty and staff regarding their duties toward students, faculty, staff, and visitors.

249. The MSU Defendants failed to train and supervise its employees, agents, and/or representatives including all faculty and staff, regarding the following duties:

   a.  Perceive, report, and stop inappropriate sexual conduct on campus;

   b.  Provide diligent supervision over student-athletes and other individuals;

   c.  Report suspected incidents of sexual abuse or sexual assault;

   d.  Ensure the safety of all students, faculty, staff, and visitors to Defendant MSU's campuses premises;

    e.  Provide a safe environment for all students, faculty, staff, and visitors to Defendant MSU's premises free from sexual harassment; and,

    f.  Properly train faculty and staff to be aware of their individual responsibility for creating and maintaining a safe environment.

250. The above list of duties is not exhaustive.

251. The MSU Defendants failed to adequately train coaches, trainers, medical staff, and others regarding the aforementioned duties which led to violations of Plaintiffs' rights.

252. As a result, the MSU Defendants deprived Plaintiffs of rights secured by the Fourteenth Amendment to the United States Constitution in violation of 42 U.S.C. §1983.

253. As a direct and/or proximate result of Defendants' actions and/or inactions, Plaintiffs suffered discomfort and continues to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life,  and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity.

## D.  COUNT FOUR – GROSS NEGLIGENCE AS TO THE DEFENDANTS MSU AND MSU BOARD OF TRUSTEES AND DEFENDANT NASSAR

254. Plaintiffs reallege and incorporate by reference the allegations contained in the preceding paragraphs.

255. The MSU Defendants owed Plaintiffs a duty to use due care to ensure their safety and freedom from sexual assault, abuse, and molestation while interacting with their employees, representatives, and/or agents, including Defendant Nassar.

256. Defendant Nassar owed Plaintiffs a duty of due care in carrying out medical treatment as

an employee, agent, and/or representative of the MSU Defendants.

257. By seeking medical treatment from Defendant Nassar in the course of his employment, agency, and/or representation of the MSU Defendants, a special, confidential, and fiduciary relationship between Plaintiffs and Defendant Nassar was created, resulting in Defendant Nassar owing Plaintiffs a duty to use due care.

258. The MSU Defendants' failure to adequately supervise Defendant Nassar, especially after MSU knew or should have known of complaints regarding his nonconsensual sexual touching and assaults during "treatments" was so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiffs.

259. Defendant Nassar's conduct in sexually assaulting, abusing, and molesting Plaintiffs in the course of his employment, agency, and/or representation of the MSU Defendants and under the guise of rendering "medical treatment" was so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiffs.

260. The MSU Defendants' conduct demonstrated a willful disregard for precautions to ensure Plaintiffs' safety.

261. The MSU Defendants' conduct as described above, demonstrated a willful disregard for substantial risks to Plaintiffs.

262. The MSU Defendants breached duties owed to Plaintiffs and were grossly negligent when they conducted themselves by the actions described above, said acts having been committed with reckless disregard for Plaintiffs' health, safety, Constitutional and/or statutory rights, and with a substantial lack of concern as to whether an injury would result.

263. As a direct and/or proximate result of Defendants' actions and/or inactions, Plaintiffs suffered discomfort and continues to suffer pain of mind and body, shock, emotional distress,

physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, were prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity.

## E. COUNT FIVE – NEGLIGENCE AS TO DEFENDANTS MSU AND MSU BOARD OF TRUSTEES AND DEFENDANT NASSAR

156. Plaintiffs re-allege and incorporate by reference the allegations contained in the preceding paragraphs.

157. The MSU Defendants owed Plaintiffs a duty of ordinary care to ensure their safety and freedom from sexual assault, abuse, and molestation while interacting with their employees, representatives and/or agents.

158. By seeking medical treatment from Defendant Nassar in his capacity as an employee, agent, and/or representative of the MSU Defendants, a special, confidential, and fiduciary relationship between Plaintiffs and Defendant Nassar was created, resulting in Defendant Nassar owing Plaintiffs a duty to use ordinary care.

159. The MSU Defendants' failure to adequately train and supervise Defendant Nassar breached their duty of ordinary care.

160. The MSU Defendants had notice through its own employees, agents, and/or representatives as early as 1999, possibly earlier, again in 2000, and again in 2014 of complaints of a sexual nature related to Defendant Nassar's purported "treatments" with young girls and women.

161. The MSU Defendants should have known of the foreseeability of sexual abuse with respect to youth and collegiate sports.

162. The MSU Defendants' failure to properly investigate, address, and remedy complaints

regarding Defendant Nassar's conduct was a breach of ordinary care.

163. Defendant Nassar's conduct in sexually assaulting, abusing, and molesting Plaintiffs in the course of his employment, agency, and/or representation of the MSU Defendants was a breach of his duty to use ordinary care.

164. As a direct and/or proximate result of Defendants' conduct, actions and/or inactions, Plaintiffs suffered discomfort and continues to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, were prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity.

## F. COUNT SIX – VICARIOUS LIABLITY AGAINST DEFENDANTS MSU AND MSU BOARD OF TRUSTEES

165. Plaintiffs re-allege and incorporate by reference the allegations contained in the preceding paragraphs.

166. Vicarious liability is indirect responsibility imposed by operation of law where an employer is bound to keep its employees within their proper bounds and is responsible if it fails to do so. *See generally Gallagher v. C.H. Robinson Worldwide, Inc.*, 567 F.3d 263 (6th Cir. 2009).

167. Vicarious liability essentially creates agency between the principal and its agent so that the principal is held to have done what the agent has done.

168. The MSU Defendants employed and/or held Defendant Nassar out to be its agent and/or representative from approximately 1996 to 2016.

169.   Defendant MSU's website contains hundreds of pages portraying Defendant Nassar as a distinguished member of Defendant MSU's College of Osteopathic Medicine, Division of Sports Medicine.[11]

170.   The MSU Defendants are vicariously liable for the actions of Defendant Nassar as described above that were performed during the course of his employment, representation, and/or agency with the MSU Defendants and while he had unfettered access to young female athletes on MSU's campus and premises through its College of Osteopathic Medicine and Division of Sports Medicine.

171.   As a direct and/or proximate result of Defendant Nassar's actions carried out in the course of his employment, agency, and/or representation of the MSU Defendants, Plaintiffs suffered discomfort and continues to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, were prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity.

G.  COUNT SEVEN - EXPRESS/IMPLIED AGENCY AS TO DEFENDANTS MSU AND MSU BOARD OF TRUSTEES

172.   Plaintiffs re-allege and incorporate by reference the allegations contained in the preceding paragraphs.

173.   An agent is a person who is authorized by another to act on its behalf.

174.   The MSU Defendants intentionally or negligently made representations that Defendant

---

[11] As of January 5, 2017, using the search term "Nassar" at www.msu.edu returns 402 results, the majority of which include references to Defendant Nassar dating as far back as 1997.

Nassar was their employee, agent, and/or representative.

175.    On the basis of those representations, Plaintiffs reasonably believed that Defendant Nassar was acting as an employee, agent, and/or representative of the MSU Defendants.

176.    Plaintiffs were injured as a result of Defendant Nassar's sexual assault, abuse, and molestation as described above, acts that were performed during the course of his employment, agency, and/or representation with the MSU Defendants and while he had unfettered access to young  female athletes.

177.    Plaintiffs were injured because they relied on the MSU Defendants to provide employees, agents, and/or representatives who would exercise reasonable skill and care.

178.    As a direct and/or proximate cause of Defendant Nassar's negligence carried out in the course of his employment, agency, and/or representative of the MSU Defendants, Plaintiffs suffered discomfort and continues to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, were prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity.

## H.  COUNT EIGHT - NEGLIGENT SUPERVISION AS TO DEFENDANTS MSU AND MSU BOARD OF TRUSTEES

179.    Plaintiffs re-allege and incorporate by reference the allegations contained in the preceding paragraphs.

180.    The MSU Defendants had a duty to provide reasonable supervision of their employee, agent, and/or representative, Defendant Nassar, while he was in the course of his employment,

agency or representation with the MSU Defendants and while he interacted with young female athletes, including Plaintiffs.

181.    It was reasonably foreseeable given the known sexual abuse in youth sports and gymnastics in particular that Defendant Nassar who had prior allegations against him had or would sexually abuse children, including Plaintiffs, unless properly supervised.

182.    The MSU Defendants by and through their employees, agents, managers and/or assigns, such as President Simon, President McPherson, Dean Strampel or Dr. Kovan knew or reasonably should have known of Defendant Nassar's conduct and/or that Defendant Nassar was an unfit employee, agent, and/or representative because of his sexual interest in children.

183.    The MSU Defendants breached their duty to provide reasonable supervision of Defendant Nassar, and permitted Defendant Nassar, who was in a position of trust and authority, to commit the acts against Plaintiffs.

184.    The aforementioned sexual abuse occurred while Plaintiffs and Defendant Nassar were on the premises of Defendant MSU, and while Defendant Nassar was acting in the course of his employment, agency, and/or representation of the MSU Defendants.

185.    The MSU Defendants tolerated, authorized and/or permitted a custom, policy, practice or procedure of insufficient supervision and failed to adequately screen, counsel, or discipline such individuals, with the result that Defendant Nassar was allowed to violate the rights of persons such as Plaintiffs with impunity.

186.    As a direct and/or proximate result of the MSU Defendants' negligent supervision, Plaintiffs suffered discomfort and continues to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem,

disgrace, fright, grief, humiliation, loss of enjoyment of life, were prevented and will continue

to be prevented from performing daily activities and obtaining the full enjoyment of life, and

has sustained and continues to sustain loss of earnings and earning capacity.

## I.  COUNT NINE - NEGLIGENT FAILURE TO WARN OR PROTECT AS TO DEFENDANTS MSU AND MSU BOARD OF TRUSTEES

187.    Plaintiffs re-allege and incorporate by reference the allegations contained in the preceding

paragraphs.

188.    The MSU Defendants knew or should have known that Defendant Nassar posed a risk of

harm to Plaintiffs or those in Plaintiffs' situation.

189.    The MSU Defendants had direct and/or constructive knowledge as to the dangerous

conduct of Defendant Nassar and failed to act reasonably and responsibly in response.

190.    The MSU Defendants knew or should have known Defendant Nassar committed sexual

assault, abuse, and molestation and/or was continuing to engage in such conduct.

191.    The MSU Defendants had a duty to warn or protect Plaintiffs and others in Plaintiffs'

situation against the risk of injury by Defendant Nassar.

192.    The duty to disclose this information arose by the special, trusting, confidential, and

fiduciary relationship between Defendant Nassar as an employee, agent, and/or  representative

of the MSU Defendants and Plaintiffs.

193.    The MSU Defendants breached said duty by failing to warn Plaintiffs and/or by failing to

take reasonable steps to protect Plaintiffs from Defendant Nassar.

194.    The MSU Defendants breached its duties to protect Plaintiffs by failing to:

      A.  respond to allegations of sexual assault, abuse, and molestation;

      B.  detect and/or uncover evidence of sexual assault, abuse, and molestation; and,

      C.  investigate, adjudicate, and terminate Defendant Nassar's employment with

Defendant MSU prior to 2016.

195.     The MSU Defendants failed to adequately screen, counsel and/or discipline Defendant

Nassar for physical and/or mental conditions that might have rendered him unfit to discharge

the duties and responsibilities of a physician at an educational institution, resulting in violations

of Plaintiffs' rights.

196.     The MSU Defendants willfully refused to notify, give adequate warning, and implement

appropriate safeguards to protect Plaintiffs from Defendant Nassar's conduct.

197.     As a direct and/or proximate result of the MSU Defendants negligent failure to warn or

protect, Plaintiffs suffered discomfort and continues to suffer pain of mind and body, shock,

emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-

esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, were prevented and will

continue to be prevented from performing daily activities and obtaining the full enjoyment of

life, and has sustained and continues to sustain loss of earnings and earning capacity.

J.  COUNT TEN - NEGLIGENT FAILURE TO TRAIN OR EDUCATE AS TO
DEFENDANTS MSU AND MSU BOARD OF TRUSTEES

198.     Plaintiffs re-allege and incorporate by reference the allegations contained in the preceding

paragraphs.

199.     The MSU Defendants breached their duty to take reasonable protective measures to protect

Plaintiffs and other patients from the risk of childhood sexual abuse and/or sexual assault by

Defendant Nassar, such as the failure to properly train or educate Plaintiffs and other

individuals (including minors) about how to avoid such a risk.

200.     The MSU Defendants failed to implement reasonable safeguards to:

        A.  Prevent acts of sexual assault, abuse, and molestation by Defendant Nassar;

      B.  Avoid placing Defendant Nassar in positions where he would be in unsupervised contact and interaction with Plaintiffs and other young athletes.

201.    As a direct and/or proximate result of the MSU Defendants' negligent failure to train or educate, Plaintiffs suffered discomfort and continues to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, were prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity.

## K.  COUNT ELEVEN - NEGLIGENT RETENTION AS TO DEFENDANTS MSU AND MSU BOARD OF TRUSTEES

202.    Plaintiffs re-allege and incorporate by reference the allegations contained in the preceding paragraphs.

203.    The MSU Defendants had a duty when credentialing, hiring, retaining, screening, checking, regulating, monitoring, and supervising employees, agents and/or representatives to exercise due care, but they failed to do so.

204.    The MSU Defendants were negligent in the retention of Defendant Nassar as an employee, agent, and/or representative in their failure to adequately investigate, report and address complaints about his conduct of which they knew or should have known.

205.    The MSU Defendants were negligent in the retention of Defendant Nassar as an employee, agent, and/or representative when after they discovered, or reasonably should have discovered Defendant Nassar's conduct which reflected a propensity for sexual misconduct.

206.    The MSU Defendants' failure to act in accordance with the standard of care resulted in Defendant Nassar gaining access to and sexually abusing and/or sexually assaulting Plaintiffs and an unknown number of other individuals.

207.    The aforementioned negligence in the credentialing, hiring, retaining, screening, checking, regulating, monitoring, and supervising of Defendant Nassar created a foreseeable risk of harm to Plaintiffs as well as other minors and young adults.

208.    As a direct and/or proximate result of the MSU Defendants' negligent retention, Plaintiffs suffered discomfort and continues to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, were prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity.

L.  COUNT TWELVE - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AS TO DEFENDANTS MSU AND MSU BOARD OF TRUSTEES

209.    Plaintiffs re-allege and incorporate by reference the allegations contained in the preceding paragraphs.

210.    The MSU Defendants allowed Defendant Nassar to be in a position where he could sexually assault, abuse, and molest children and young adults.

211.    A reasonable person would not expect the MSU Defendants to tolerate or permit their employee or agent to carry out sexual assault, abuse, or molestation after they knew or should have known of complaints and claims of sexual assault and abuse occurring during Defendant Nassar's "treatments."

212.    The MSU Defendants held Defendant Nassar in high esteem and acclaim which in turn encouraged Plaintiffs and others to respect and trust Defendant Nassar and seek out his services and to not question his methods or motives.

213.    The MSU Defendants protected Defendant Nassar in part to bolster and sustain his national

and international reputation in the gymnastics community.

214.    A reasonable person would not expect the MSU Defendants to be incapable of supervising Defendant Nassar and/or preventing Defendant Nassar from committing acts of sexual assault, abuse, and molestation.

215.    The MSU Defendants' conduct as described above was intentional and/or reckless.

216.    As a direct and/or proximate result of the MSU Defendants' conduct, Plaintiffs suffered discomfort and continues to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, were prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity.

## M.  COUNT THIRTEEN - FRAUD AND MISREPRESENTATION  AS TO DEFENDANTS MSU AND MSU BOARD OF TRUSTEES

217.    Plaintiffs re-allege and incorporate by reference the allegations contained in the preceding paragraphs.

218.    From approximately 1996 to September 2016, the MSU Defendants represented to Plaintiffs and the public that Defendant Nassar was a competent and safe physician.

219.    By representing that Defendant Nassar was a team physician and athletic physician at Defendant MSU and a National Team Physician with Defendant USAG, the MSU Defendants represented to Plaintiffs and the public that Defendant Nassar was safe, trustworthy, of high moral and ethical repute, and that Plaintiffs and the public need not worry about being harmed by Defendant Nassar.

220.    The representations were false when they were made as Defendant Nassar had and was continuing to sexually assault, abuse, and molest Plaintiffs and an unknown number of other

individuals.

221.    After the complaints brought to MSU representatives in 1999, 2000, and possibly earlier, regarding Defendant Nassar's conduct, the MSU Defendants knew their representations of Defendant Nassar were false.

222.    Although MSU was informed of Defendant Nassar's conduct, they failed to investigate, remedy, or in any way address the complaints.

223.    The MSU Defendants continued to hold Defendant Nassar out as a competent and safe physician.

224.    Additional complaints against Defendant Nassar surfaced in 2014; however, because of Defendant MSU's culture which included existence of a sexually hostile environment on Defendant MSU's campus and premises and the University's failure to address complaints of sexual harassment, including sexual violence, in a prompt and equitable manner which in turn caused and may have contributed to a continuation of the sexually hostile environment, Defendant Nassar was permitted to continue employment and sexually abuse, assault, and molest Plaintiffs and an unknown number of other individuals.[12]

225.    Between the time of the 2014 complaint and September 2016, the MSU Defendants continued to hold Defendant Nassar out as a competent and safe physician.

226.    Plaintiffs relied on the assertions of the MSU Defendants and continued to seek treatment from Defendant Nassar while the MSU Defendants knew of the concerns and dangers.

227.    Plaintiffs were subjected to sexual assault, abuse, and molestation as a result of the MSU

---

[12] *See,* Letter from U.S. Department of Education Office for Civil Rights to Michigan State University, September 1, 2015, OCR Docket #15-11-2098, #15-14-2113. Available at https://www2.ed.gov/documents/press-releases/michigan-state-letter.pdf, last accessed January 4, 2017.

Defendants' fraudulent misrepresentations regarding Defendant Nassar.

228.    As a direct and/or proximate result of the MSU Defendants' fraudulent misrepresentations, Plaintiffs suffered discomfort and continues to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, were prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity.

## VI.    CLAIMS AGAINST USA GYMNASTICS

### A.  COUNT FOURTEEN - GROSS NEGLIGENCE AS TO DEFENDANT USAG AND DEFENDANT NASSAR

229.    Plaintiffs re-allege and incorporate by reference the allegations contained in the preceding paragraphs.

230.    Defendant USA Gymnastics ("USAG") owed Plaintiffs a duty to use due care to ensure their safety and freedom from sexual assault, abuse, and molestation while interacting with its employees, representatives, and/or agents.

231.    Plaintiffs were members of USAG, participated in USAG sanctioned events, and were knowledgeable of and in some cases were referred to Defendant Nassar for medical treatment through USAG affiliations.

232.    Defendant Nassar owed Plaintiffs a duty to use due care in his capacity as an employee, representative, and/or agent of Defendant USAG.

233.    By seeking medical treatment from Defendant Nassar in his capacity as an employee, agent, and/or representative of Defendant USAG, a special, confidential, and fiduciary relationship between Plaintiffs and Defendant Nassar was created, resulting in Defendant Nassar owing Plaintiffs a duty to use due care.

234.    Defendant USAG's failure to adequately supervise Defendant Nassar was so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiffs.

235.    Defendant Nassar's conduct in sexually assaulting, abusing, and molesting Plaintiffs under the guise of rendering medical "treatment" as an employee, representative, and/or agent of Defendant USAG was so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiffs.

236.    Defendant USAG's conduct demonstrated a willful disregard for necessary precautions to reasonably protect Plaintiffs' safety.

237.    Defendant USAG's conduct as described above, demonstrated a willful disregard for the substantial risks to Plaintiffs.

238.    Defendant USAG breached duties owed to Plaintiffs and were grossly negligent when it conducted itself by actions described above, including but not limited to its failure to notify MSU about the reasons for Nassar's separation from USAG and more broadly the issues surrounding sexual abuse in gymnastics and warning signs and reporting requirements.

239.    Said acts were committed with reckless disregard for Plaintiffs' health, safety, Constitutional and/or statutory rights, and with a substantial lack of concern as to whether an injury would result.

240.    As a direct and/or proximate result of Defendant USAG'S actions and/or inactions, Plaintiffs suffered discomfort and continues to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, were prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity.

## B. COUNT FIFTEEN – NEGLIENCE AS TO DEFENDANT USAG AND DEFENDANT NASSAR

241.   Plaintiffs reallege and incorporate by reference the allegations contained in the preceding paragraphs.

242.   Defendant USAG owed Plaintiffs a duty of ordinary care to ensure her safety and freedom from sexual assault, abuse, and molestation while being treated by its employees, representatives, and agents.

243.   Plaintiffs, as members of the USAG, had a reasonable expectation that the USAG was recommending competent and ethical physicians and trainers for medical treatment who would carry out said treatment without sexual assault, abuse, and molestation.

244.   By seeking medical treatment from Defendant Nassar in his capacity as an employee, agent, and/or representative of Defendant USAG, a special, confidential, and fiduciary relationship between Plaintiffs and Defendant Nassar was created, resulting in Defendant Nassar owing Plaintiff a duty to use ordinary care.

245.   Defendant Nassar owed Plaintiffs a duty of ordinary care in carrying out medical treatment.

246.   Defendant USAG's failure to adequately train and supervise Defendant Nassar breached the duty of ordinary care.

247.   Defendant USAG's failure to properly investigate, address, and remedy complaints regarding Defendant Nassar's conduct was a breach of ordinary care.

248.   Defendant USAG's failure to inform Plaintiffs and the public of the allegations and concerns leading to Defendant Nassar's separation from USAG was a breach of ordinary care.

249.    Defendant Nassar's conduct in sexually assaulting, abusing, and molesting Plaintiffs was a breach of the duty to use ordinary care.

250.    As a direct and/or proximate result of Defendants' conduct, actions and/or inactions, Plaintiffs suffered discomfort and continues to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, were prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity.

## C.  COUNT SIXTEEN – VICARIOUS LIABILITY AS TO DEFENDANT USAG

251.    Plaintiffs re-allege and incorporate by reference the allegations contained in the preceding paragraphs.

252.    Vicarious liability is indirect responsibility imposed by operation of law where an employer is bound to keep its employees within their proper bounds and is responsible if it fails to do so.

253.    Vicarious liability essentially creates agency between the principal and its agent, so that the principal is held to have done what the agent has done.

254.    Defendant USAG employed and/or held Defendant Nassar out to be its agent and/or representative from approximately 1986 to 2015.

255.    Defendant USAG is vicariously liable for the actions of Defendant Nassar as described above that were performed during the course of his employment, representation, or agency with Defendant USAG and while he had unfettered access to young female athletes.

256.    As a direct and/or proximate cause of Defendant Nassar's negligence carried out in the course of his employment, agency, and/or representation with Defendant USAG, Plaintiffs

suffered discomfort and continues to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, were prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity.

## D. COUNT SEVENTEEN – EXPRESS/IMPLIED AGENCY AS TO DEFENDANT USAG

257.    Plaintiffs re-allege and incorporate by reference the allegations contained in the preceding paragraphs.

258.    An agent is a person who is authorized by another to act on its behalf.

259.    Defendant USAG intentionally or negligently made representations that Defendant Nassar was its employee, agent, and/or representative.

260.    On the basis of those representations, Plaintiffs reasonably believed Defendant Nassar was acting as an employee, agent, and/or representation of Defendant USAG.

261.    Plaintiffs were injured as a result of Defendant Nassar's sexual assault, abuse, and molestation carried out through his employment, agency, and/or representation with Defendant USAG.

262.    Plaintiffs were injured because they relied on Defendant USAG to provide employees or agents who would exercise reasonable skill and care.

263.    As a direct and/or proximate cause of Defendant Nassar's negligence carried out in the course of his employment, agency, and/or representation with Defendant USAG, Plaintiffs suffered discomfort and continues to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, were prevented and will continue to be

prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity.

E. COUNT EIGHTEEN – NEGLIGENT SUPERVISION AS TO DEFENDANT USAG

264.    Plaintiffs re-allege and incorporate by reference the allegations contained in the preceding paragraphs.

265.    Defendant USAG had a duty to provide reasonable supervision of its employee, agent, and/or representative, Defendant Nassar, while he was in the course of his employment, agency and/or representation of Defendant USAG and while he interacted with young female athletes including Plaintiff.

266.    It was reasonably foreseeable given the known sexual abuse in youth sports and gymnastics in particular that Defendant Nassar, who had prior allegations, against him would sexually abuse children, including Plaintiffs, unless properly supervised.

267.    Defendant USAG by and through its employees, agents, managers and/or assigns such as Mr. Penny or Mr. Colarossi, knew or reasonably should have known of Defendant Nassar's conduct and/or that Defendant Nassar was an unfit employee, agent, and/or representative because of his sexual interest in children and young adults.

268.    Defendant USAG breached its duty to provide reasonable supervision of Defendant Nassar, and its failure permitted Defendant Nassar, who was in a position of trust and authority, to sexually abuse Plaintiffs.

269.    The aforementioned sexual abuse occurred while Defendant Nassar was acting in the course of his employment, agency and/or representation of Defendant USAG.

270.    Defendant USAG tolerated, authorized and/or permitted a custom, policy, practice or procedure of insufficient supervision and failed to adequately screen, counsel or discipline

Defendant Nassar, with the result that Defendant Nassar was allowed to violate the rights of Plaintiffs and other young girls with impunity.

271.    As a direct and/or proximate result of Defendant USAG's negligent supervision, Plaintiffs suffered discomfort and continues to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, were prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity.

F.  COUNT NINETEEN – NEGLIGENT FAILURE TO WARN OR PROTECT AS TO DEFENDANT USAG

272.    Plaintiffs re-allege and incorporate by reference the allegations contained in the preceding paragraphs.

273.    Given the direct or indirect knowledge of sexual abuse in youth sports and in particular gymnastics, it was reasonably foreseeable that sexual abuse of minors may occur if proper procedures were put in place by Defendant USAG.

274.    Defendant USAG knew or should have known that Defendant Nassar posed a risk of harm to Plaintiff or those in Plaintiffs' position.

275.    Defendant USAG had direct and/or constructive knowledge as to the dangerous conduct of Defendant Nassar and failed to act reasonably and responsibly in response.

276.    Defendant USAG knew or should have known that Defendant Nassar previously committed sexual assault, abuse, and molestation and/or was continuing to engage in such conduct.

277.    Defendant USAG had a duty to warn or protect Plaintiffs and others in Plaintiffs' situation against the risk of injury by Defendant Nassar.

278.    The duty to disclose this information arose by the special, trusting, confidential, and fiduciary relationship between Defendant Nassar in his capacity as employee, agent, and/or representative of Defendant USAG and Plaintiffs.

279.    Defendant USAG breached said duty by failing to warn Plaintiffs and/or by failing to take reasonable steps to protect Plaintiffs from Defendant Nassar.

280.    Defendant USAG breached its duties to protect Plaintiffs by failing to detect and/or uncover evidence of sexual abuse and sexual assault, investigate Defendant Nassar, adjudicate and suspend and/or ban Defendant Nassar from USAG affiliation and USAG sanctioned events.

281.    Defendant USAG failed to adequately screen, counsel and/or discipline Defendant Nassar for physical and/or mental conditions that might have rendered him unfit to discharge the duties and responsibilities of a physician in his capacity as an employee, agent, and/or representative of Defendant USAG, resulting in violations of Plaintiffs' rights.

282.    Defendant USAG willfully refused to notify, give adequate warning, and implement appropriate safeguards to protect Plaintiffs from Defendant Nassar's conduct.

283.    As a direct and/or proximate result of Defendant USAG's negligent failure to warn or protect, Plaintiffs suffered discomfort and continues to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, were prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity.

G.  COUNT TWENTY – NEGLIGENT FAILURE TO TRAIN OR EDUCATE AS TO DEFENDANT USAG

284.    Plaintiffs re-allege and incorporate by reference the allegations contained in the preceding

paragraphs.

285.    Defendant USAG breached its duty to take reasonable protective measures to protect Plaintiffs and other young girls from the risk of childhood sexual abuse and/or sexual assault by Defendant Nassar, such as the failure to properly train or educate Plaintiffs and other individuals, including minors, about how to avoid such a risk.

286.    Defendant USAG failed to implement reasonable safeguards to:

      A.   Prevent acts of sexual assault, abuse, and molestation by Defendant Nassar;

      B.   Avoid placing Defendant Nassar in positions where he would be in unsupervised contact and interaction with Plaintiffs and other young athletes.

287.    As a direct and/or proximate result of Defendant USAG's negligent failure to train or educate, Plaintiffs suffered discomfort and continues to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, were prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity.

H.  COUNT TWENTY-ONE – NEGLIGENT RETENTION AS TO DEFENDANT USAG

288.    Plaintiffs re-allege and incorporate by reference the allegations contained in the preceding paragraphs.

289.    Defendant USAG had a duty when credentialing, hiring, retaining, screening, checking, regulating, monitoring, and supervising employees, agents and/or representatives to exercise due care, but they failed to do so.

290.    Defendant USAG was negligent in the retention of Defendant Nassar as an employee, agent, and/or representative in its failure to adequately investigate, report, and address

complaints about his conduct of which they knew or should have known.

291. Defendant USAG was negligent in the retention of Defendant Nassar when after they discovered, or reasonably should have discovered Defendant Nassar's conduct which reflected a propensity for sexual misconduct.

292. Defendant USAG's failure to act in accordance with the standard of care resulted in Defendant Nassar gaining access to and sexually abusing and/or sexually assaulting Plaintiffs as well as an unknown number of other minors and young women.

293. The aforementioned negligence in the credentialing, hiring, retaining, screening, checking, regulating, monitoring, and supervising of Defendant Nassar created a foreseeable risk of harm to Plaintiffs as well as other minors and young women.

294. As a direct and/or proximate result of Defendant USAG's negligent retention, Plaintiffs suffered discomfort and continues to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, were prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity.

## I. COUNT TWENTY-TWO – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AS TO DEFENDANT USAG

295. Plaintiffs re-allege and incorporate by reference the allegations contained in the preceding paragraphs.

296. Defendant USAG allowed Defendant Nassar to be in a position where he could sexually assault, abuse, and molest children and young adults.

297. A reasonable person would not expect Defendant USAG to tolerate or permit its employee, agent, or representative to carry out sexual assault, abuse, or molestation.

298.   Defendants USAG held Defendant Nassar in high esteem and acclaim which in turn encouraged Plaintiffs and others to respect and trust Defendant Nassar and seek out his services and to not question his methods or motives.

299.   Defendants USAG protected Defendant Nassar in part to bolster his national and international reputation in the gymnastics community.

300.   A reasonable person would not expect Defendant USAG to be incapable of supervising Defendant Nassar and/or preventing Defendant Nassar from committing acts of sexual assault, abuse and molestation.

301.   Defendant USAG's conduct as described above was intentional and/or reckless.

302.   As a direct and/or proximate result of Defendant USAG's conduct, Plaintiffs suffered discomfort and continues to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, were prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity.

J.  COUNT TWENTY-THREE – FRAUD AND MISREPRESENTATION AS TO DEFENDANT USAG

303.   Plaintiffs re-allege and incorporate by reference the allegations contained in the preceding paragraphs.

304.   From approximately 1996 to summer 2015, Defendant USAG represented to Plaintiffs and the public that Defendant Nassar was a competent, ethical, and safe physician.

305.   By representing that Defendant Nassar was a team physician and athletic physician at Defendant MSU and a National Team Physician with Defendant USAG, Defendant USAG represented to Plaintiffs and the public that Defendant Nassar was safe, trustworthy, of high

moral and ethical repute, and that Plaintiffs and the public need not worry about being harmed by Defendant Nassar.

306.    The representations were false when they were made because Defendant Nassar had and was continuing to sexually assault, abuse, and molest Plaintiffs and an unknown number of other individuals.

307.    Additionally, complaints were made to Defendant USAG, yet Defendant USAG did not contact Plaintiffs, the MSU Defendants, or any other clubs or organizations affiliated with Defendant Nassar to inform them of the allegations and potential harm to Plaintiffs and others.

308.    Plaintiffs relied on the assertions of Defendant USAG and continued to seek treatment of Defendant Nassar while Defendant USAG knew of the concerns and dangers.

309.    Plaintiffs were subjected to sexual assault, abuse, and molestation as a result of Defendant USAG's fraudulent misrepresentations regarding Defendant Nassar.

310.    As a direct and/or proximate result of Defendant USAG's fraudulent misrepresentations, Plaintiffs suffered discomfort and continues to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, were prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity.

## VII.    CLAIMS AGAINST TWISTARS

### A. COUNT TWENTY-FOUR – GROSS NEGLIGENCE AS TO DEFENDANT TWISTARS AND DEFENDANT NASSAR

311.    Plaintiffs re-allege and incorporate by reference the allegations contained in the preceding paragraphs.

312.    Defendant Twistars owed Plaintiffs a duty to use due care to ensure their safety and

freedom from sexual assault, abuse, and molestation while interacting with its employees, representatives, and/or agents.

313.   Defendant Nassar owed Plaintiffs a duty to use due care as an employee, representative, and/or agent of Defendant Twistars.

314.   By seeking medical treatment from Defendant Nassar in his capacity as an employee, agent, and/or representative of Defendant Twistars, a special, confidential, and fiduciary relationship between Plaintiffs and Defendant Nassar was created, resulting in Defendant Nassar owing Plaintiff a duty to use due care.

315.   Despite the known sexual abuse which has taken place in youth sports, particularly gymnastics, and the reasonable foreseeability that harm may occur to athletes, Defendant Twistars failed to adequately supervise Defendant Nassar.

316.   Defendant Twistars' actions were so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiffs and other young athletes training at Twistars.

317.   Defendant Nassar's conduct in sexually assaulting, abusing, and molesting Plaintiffs in the course of his employment, agency, and/or representation of Defendant Twistars and under the guise of rendering medical "treatment" as an employee, representative, and/or agent of Defendant Twistars was so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiff.

318.   Defendant Twistars' conduct demonstrated a willful disregard for precautions to ensure Plaintiffs' safety.

319.   Defendant Twistars' conduct, as described above, demonstrated a willful disregard for substantial risks to Plaintiffs.

320.    Defendant Twistars breached duties owed to Plaintiffs and was grossly negligent, as demonstrated by the actions and inactions described above.

321.    Defendant Twistars acted with reckless disregard for Plaintiffs' health, safety, Constitutional and/or statutory rights, and with a substantial lack of concern as to whether an injury would result.

322.    As a direct and/or proximate result of Defendant Twistars' actions and/or inactions, Plaintiffs suffered discomfort and continues to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, were prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity.

## B. COUNT TWENTY-FIVE – NEGLIGENCE  AS TO DEFENDANT TWISTARS AND DEFENDANT NASSAR

323.    Plaintiffs re-allege and incorporate by reference the allegations contained in the preceding paragraphs.

324.    In or around 1997, a parent of a gymnast at Defendant Twistars' facility complained to Mr. Geddert, the owner and operator of Defendant Twistars, regarding Dr. Nassar's conduct alleging sexual abuse, assault, and molestation.

325.    Despite being informed of Defendant Nassar's conduct, Mr. Geddert recommended Defendant Nassar as a physician.

326.    Mr. Geddert owed Plaintiffs a duty of ordinary care to ensure her safety and freedom from sexual assault, abuse, and molestation.

327.    In recommending Defendant Nassa,r with knowledge of Defendant Nassar's conduct, Mr. Geddert breached the duty of ordinary care to Plaintiff and the public.

328.    Defendant Twistars breached the duty of ordinary care to Plaintiffs and the public by failing to investigate the 1997 allegations of sexual abuse made to Mr. Geddert.

329.    Defendant Twistars breached the duty of ordinary care to Plaintiffs and the public by failing to report the 1997 allegations, which were made to Mr. Geddert, to law enforcement.

330.    By seeking medical treatment from Defendant Nassar, a special, confidential, and fiduciary relationship between Plaintiffs and Defendant Nassar was created, resulting in Defendant Nassar owing Plaintiffs a duty to use ordinary care.

331.    Defendant Nassar owed Plaintiffs a duty of ordinary care in carrying out medical treatment at Defendant Twistars' facilities.

332.    Defendant Twistars' failure to adequately train and supervise Defendant Nassar while he was at its facility breached the duty of ordinary care.

333.    Defendant Nassar's conduct at Defendant Twistars' facility, in sexually assaulting, abusing, and molesting Plaintiffs in the course of and under the guise of rendering medical "treatment" breached of the duty to use ordinary care.

334.    As a direct and/or proximate result of Defendants' conduct, actions and/or inactions, Plaintiffs suffered discomfort and continues to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, were prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity.

## C. COUNT TWENTY-SIX – EXPRESS/IMPLIED AGENCY AS TO DEFENDANT TWISTARS

335.    Plaintiffs re-allege and incorporate by reference the allegations contained in the preceding paragraphs.

336.    An agent is a person who is authorized by another to act on its behalf.

337.    Defendant Twistars intentionally or negligently made representations that Defendant Nassar was its employee, agent, and/or representative.

338.    On the basis of those representations, Plaintiffs reasonably believed that Defendant Nassar was acting as an employee, agent, and/or representative of Defendant Twistars.

339.    Plaintiffs were injured as a result of Defendant Nassar's sexual assault, abuse, and molestation as described above.

340.    Plaintiffs were injured because they relied on Defendant Twistars to provide employees, agents, and/or representatives who would exercise reasonable skill or care.

341.    As a proximate cause of Defendant Nassar's negligence carried out through his employment, agency, and or representation of Defendant Twistars, Plaintiffs suffered discomfort and continues to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, were prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity.

## D. COUNT TWENTY-SEVEN – NEGLIGENT SUPERVISION AS TO DEFENDANT TWISTARS

342.    Plaintiffs reallege and incorporate by reference the allegations contained in the preceding paragraphs.

343.    Defendant Twistars had a duty to provide reasonable supervision of its employee, agent, and/or representative, Defendant Nassar, while he was in the course of his employment, agency, or representation of Defendant Twistars when he interacted with young female athletes including Plaintiffs.

58

344.    It was reasonably foreseeable given the known sexual abuse in youth sports and gymnastics in particular that Defendant Nassar, who had prior allegations of sexual abuse levied against him, would sexually abuse children, including Plaintiffs unless properly supervised.

345.    Defendant Twistars by and through its employees, agents, managers, and/or assigns, knew or reasonably should have known of Defendant Nassar's conduct and/or that Defendant Nassar was an unfit employee, agent, and/or representative because of his sexual interest in children and young adults and the 1997 complaint made to Mr. Geddert of the nonconsensual sexual touching during "treatment."

346.    Defendant Twistars breached its duty to provide reasonable supervision of Defendant Nassar and permitted Defendant Nassar, who was in a position of trust and authority, to commit the acts against Plaintiffs.

347.    Defendant Twistars tolerated, authorized and/or permitted a custom, policy, practice or procedure of insufficient supervision and failed to adequately screen, counsel, or discipline such individuals, with the result that Defendant Nassar was allowed to violate the rights of Plaintiffs and other young athletes with impunity.

348.    As a direct and/or proximate result of Defendant Twistars' negligent supervision, Plaintiffs suffered discomfort and continues to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, were prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity.

E.  COUNT TWENTY-EIGHT – NEGLIGENT FAILURE TO WARN OR PROTECT AS TO DEFENDANT TWISTARS

349.    Plaintiffs re-allege and incorporate by reference the allegations contained in the preceding

paragraphs.

350.    Defendant Twistars knew or should have known that Defendant Nassar posed a risk of harm to Plaintiffs or those in Plaintiffs' situation.

351.    As early as 1997, Defendant Twistars, by a complaint made to its owner, employee, agent, and/or representative John Geddert, had direct and/or constructive knowledge as to the dangerous conduct of Defendant Nassar and failed to act reasonably and responsibly in response.

352.    Defendant Twistars knew or should have known that Defendant Nassar committed sexual assault, abuse, and molestation and/or was continuing to engage in such conduct.

353.    Defendant Twistars had a duty to warn or protect Plaintiffs and others in Plaintiffs' situation against the risk of injury by Defendant Nassar.

354.    The duty to disclose this information arose by the special, trusting, confidential, and fiduciary relationship between Defendant Nassar, an agent/representative/employee of Defendant Twistars and Plaintiffs.

355.    Defendant Twistars breached said duty by failing to warn Plaintiffs and/or by failing to take reasonable steps to protect Plaintiffs from Defendant Nassar.

356.    Defendant Twistars breached its duties to protect Plaintiffs by failing to detect and/or uncover evidence of sexual abuse and sexual assault, which was taking place on its premises and at its facility.

357.    Defendant Twistars breached its duty to protect Plaintiffs by failing to investigate Defendant Nassar and suspend and/or ban Defendant Nassar from Twistars sanctioned events.

358.    Defendant Twistars failed to adequately screen, counsel, and/or discipline Defendant Nassar for physical and/or mental conditions that might have rendered him unfit to discharge

the duties and responsibilities of a physician with its organization, resulting in violations of Plaintiffs' rights.

359.   Defendant Twistars willfully refused to notify, give adequate warning, and implement appropriate safeguards to protect Plaintiffs and other young athletes from Defendant Nassar's conduct.

360.   As a direct and/or proximate result of Defendant Twistars' negligent failure to warn or protect, Plaintiffs suffered discomfort and continues to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, were prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity.

F.  COUNT TWENTY-NINE – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST AS TO TWISTARS

361.   Plaintiffs re-allege and incorporate by reference the allegations contained in the preceding paragraphs.

362.   Defendant Twistars allowed Defendant Nassar to be in a position where he could sexually assault, abuse, and molest minors and young adults at its facility and other places.

363.   A reasonable person would not expect Defendant Twistars to tolerate or permit its employee, agent, or representative to carry out sexual assault, abuse, or molestation.

364.   Defendant Twistars held Defendant Nassar in high esteem and acclaim which in turn encouraged Plaintiffs and others to respect and trust Defendant Nassar, seek his services, and not question his methods or motives.

365.   Defendant Twistars protected Defendant Nassar in part to bolster and sustain his national and international reputation in the gymnastics community, and Twistars' reputation in the

gymnastics community.

366.    A reasonable person would not expect Defendant Twistars to be incapable of supervising Defendant Nassar and/or preventing Defendant Nassar from committing acts of sexual assault, abuse, and molestation on its premises and at its facility.

367.    Defendant Twistars' conduct as described above was intentional and/or reckless.

368.    As a result of Defendant Twistars' conduct, Plaintiffs suffered discomfort and continues to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, were prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity.

## G.  COUNT THIRTY – FRAUD AND MISREPRESENTATION AS TO DEFENDANT TWISTARS

369.    Plaintiffs re-allege and incorporate by reference the allegations contained in the preceding paragraphs.

370.    By representing that Defendant Nassar was a team physician and athletic physician at Defendant MSU and a National Team Physician with Defendant USAG, Defendant Twistars represented to Plaintiffs and the public that they need not worry about being harmed by Defendant Nassar.

371.    The representations were false when they were made as Defendant Nassar had and was continuing to sexually assault, abuse, and molest Plaintiffs and an unknown number of individuals at Defendant Twistars' facility.

372.    As early as 1997, Defendant Twistars knew its representations of Defendant Nassar were false because Defendant Twistars received a complaint of Defendant Nassar's conduct.

373.   Between the time of the 1997 complaint and September 2016, Defendant Twistars continued to hold Defendant Nassar out as a competent and safe physician to the public.

374.   Plaintiffs relied on the assertions of Defendants Twistars and continued to seek treatment of Defendant Nassar while Defendant Twistars knew of the concerns and dangers.

375.   Plaintiffs were subjected to sexual assault, abuse, and molestation as a result of Defendant Twistars' fraudulent   misrepresentations regarding Defendant Nassar.

376.   As a direct and/or proximate result of Defendant Twistars' fraudulent misrepresentations, Plaintiffs suffered discomfort and continues to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, were prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity.

## VIII.   CLAIMS AGAINST LAWRENCE NASSAR

### A.  COUNT THIRTY-ONE – ASSAULT AND BATTERY AS TO DEFENDANT LAWRENCE NASSAR

377.   Plaintiffs re-allege and incorporate by reference the allegations contained in the preceding paragraphs.

378.   The acts committed by Defendant Nassar against Plaintiffs described herein constitute assault and battery, actionable under the laws of Michigan.

379.   Defendant Nassar committed nonconsensual sexual acts which resulted in harmful or offensive contact with the body of Plaintiffs.

380.   Specifically, Defendant Nassar committed acts which caused injury to Plaintiffs by subjecting them to an imminent battery and/or intentional invasions of her rights to be free from offensive and harmful contact, and said conduct demonstrated that Defendant Nassar had

a present ability to subject Plaintiffs to an immediate, intentional, offensive and harmful touching.

381.    Defendant Nassar assaulted and battered Plaintiffs by nonconsensual and unwanted digital vaginal penetration and rubbing and touching Plaintiffs' genital area without notice or explanation of the "treatment."

382.    Plaintiffs did not consent to the contact, which caused injury, damage, loss, and/or harm.

383.    As a direct and/or proximate result of Defendant Nassar's assault and battery, Plaintiffs suffered discomfort and continues to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, were prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity.

## B.  COUNT THIRTY-TWO – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST AS TO DEFENDANT NASSAR

384.    Plaintiffs re-allege and incorporate by reference the allegations contained in the preceding paragraphs.

385.    Defendant Nassar used his authority and position with Defendants MSU and USAG to sexually assault, abuse, and molest Plaintiffs, and an unknown number of other minors and young adults.

386.    Defendant Nassar, in committing acts of sexual assault, abuse, and molestation as described above under the guise of medical "treatment," exhibited conduct that is extreme, outrageous and/or reckless in nature.

387.    A reasonable person would not expect his or her physician to sexually assault, abuse, or molest them, and to do so under the guise of medical "treatment" without proper notice or

explanation and without giving the patient the opportunity to refuse "treatment" of that nature.

388.　Defendant Nassar's conduct was intentional or reckless as he sexually assaulted, abused, and molested the Plaintiffs on numerous occasions from approximately 1996 to 2002.

389.　Defendant Nassar's conduct has caused and continues to cause Plaintiffs to suffer emotional and psychological distress.

390.　As a direct and/or proximate result of Defendant Nassar's outrageous conduct, Plaintiffs suffered discomfort and continues to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, were prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity.

## IX.　DAMAGES - FOR ALL AFOREMENTIONED CAUSES OF ACTION

391.　Plaintiffs re-allege and incorporate by reference the allegations contained in the preceding paragraphs.

392.　As a direct and/or proximate result of Defendants' actions and/or inactions stated above, Plaintiffs suffered discomfort and continues to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, were prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity.

393.　The conduct, actions and/or inactions of Defendants as alleged in the above stated counts and causes of action constitute violations of Plaintiffs' Constitutional and Federal rights as well as the common and/or statutory laws of the State of Michigan, and the United States District

Court has jurisdiction to hear and adjudicate said claims.

394.   In whole or in part, as a result of some or all of the above actions and/or inactions of Defendants, Plaintiffs have and continue to suffer irreparable harm as a result of the violations.

395.   The amount in controversy exceeds the jurisdictional minimum of $75,000.00.

WHEREFORE, Plaintiffs requests this Court and the finder of fact to enter a Judgment in Plaintiffs' favor against all named Defendants on all counts and claims as indicated above in an amount consistent with the proofs of trial, and seeks against Defendants all appropriate damages arising out of law, equity, and fact for each or all of the above counts where applicable and hereby requests that the trier of fact, be it judge or jury, award Plaintiffs all applicable damages, including but not limited to compensatory, special, exemplary and/or punitive damages, in whatever amount the Plaintiffs are entitled, and all other relief arising out of law, equity, and fact, also including but not limited to:

a)   Compensatory damages in an amount to be determined as fair and just under the circumstances, by the trier of fact including, but not limited to medical expenses, loss of earnings, mental anguish, anxiety, humiliation, and embarrassment, violation of Plaintiffs' Constitutional, Federal, and State rights, loss of social pleasure and enjoyment, and other damages to be proved;

b)   Punitive and/or exemplary damages in an amount to be determined as reasonable or just by the trier of fact;

c)   Reasonable attorney fees, interest, and costs; and

d)   Other declaratory, equitable, and/or injunctive relief, including, but not limited to implementation of institutional reform and measures of accountability to ensure the safety and protection of young athletes and other individuals, as appears to be reasonable and just.

Respectfully submitted,

/S/ BRIAN J. McKEEN_____
BRIAN J. McKEEN (P34123)
STEVEN C. HURBIS (P80993)
McKEEN & ASSOCIATES, P.C.
Attorneys for Plaintiff
645 Griswold St., Suite 4200
Detroit, MI 48226
(313) 961-4400 Phone
(313) 961-5985 Facsimile
bjmckeen@mckeenassociates.com
shurbis@mckeenassociates.com

Dated: July 28, 2017

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN - SOUTHERN DIVISION

Katherine Payne, Maureen Baum, and
Jane K.R Doe,

                **Plaintiffs,**

**V**

**MICHIGAN STATE UNIVERSITY;
THE BOARD OF TRUSTEES OF
MICHIGAN STATE UNIVERSITY;
LAWRENCE GERARD NASSAR**
(individual and official capacity); USA
GYMNASTICS, INC.; TWISTARS USA,
INC. d/b/a GEDDERTS' TWISTARS
GYMNASTICS CLUB USA

                **Defendants.**

Case No.:

Hon.

Complaint and Jury Demand of
Plaintiff Katherine Payne, Maureen
Baum, and Jane K.R. Doe

_____

BRIAN J. McKEEN (P34123)
STEVEN C. HURBIS (P80993)
McKEEN & ASSOCIATES, P.C.
Attorneys for Plaintiff
645 Griswold St., Suite 4200
Detroit, MI 48226
(313) 961-4400 Phone
(313) 961-5985 Facsimile
bjmckeen@mckeenassociates.com
shurbis@mckeenassociates.com

---

## JURY DEMAND

    Plaintiffs Katherine Payne, Maureen Baum, and Jane K.R. Doe, by and through their

attorneys, McKeen & Associates, hereby demands a trial by jury on all claims set forth above

                  Respectfully submitted,

                  /S/ BRIAN J. McKEEN_____
                  BRIAN J. McKEEN (P34123)
                  STEVEN C. HURBIS (P80993)
                  McKEEN & ASSOCIATES, P.C.

Attorneys for Plaintiff
645 Griswold St., Suite 4200
Detroit, MI 48226
(313) 961-4400 Phone
(313) 961-5985 Facsimile
bjmckeen@mckeenassociates.com
shurbis@mckeenassociates.com

Dated: July 28, 2017